UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| PATRICK O'MALLEY and CHRISTINE O'MALLEY,  Plaintiffs, v. STATE FARM MUTUTAL AUTOMOBILE INSURANCE COMPANY,  Defendant. | Case No. 2:22-cv-372-PPS-AZ |

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Disqualify Defense Counsel [DE 46]. Plaintiffs have moved to disqualify Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") counsel because they contend defense counsel has become a fact witness in the case by contributing to what Plaintiffs allege was State Farm's bad faith assessment of their insurance claims. State Farm, unsurprisingly, opposes Plaintiffs' motion. As discussed below, Plaintiffs have not met their heavy burden to disqualify State Farm's counsel, and the Court will deny the motion.

**Background**

This case began with a tragic car accident that occurred in the early morning hours of April 28, 2022. DE 24 (Pls.' Am. Compl.) ¶ 3. At approximately 4:10 a.m., Plaintiff Patrick O'Malley's ("Patrick") car was struck by another driver who was allegedly intoxicated and driving the wrong way on the interstate at a high speed. *Id.*

at ¶¶ 3-4. Patrick suffered life-threatening injuries in the crash. The other driver was killed. *Id.* Patrick and his wife, Plaintiff Christine O'Malley ("Christine") had an insurance policy through State Farm, but the other driver did not have car insurance, as her policy had lapsed months prior for nonpayment.

While the Amended Complaint does not specify a specific date, Plaintiffs filed a claim with State Farm relating to the accident sometime shortly thereafter seeking coverage for an uninsured motorist claim. *See* DE 24 at ¶ 6 (stating State Farm was evaluating the claim as of June 10, 2022). Plaintiffs say State Farm did not live up to its end of the bargain under their insurance contract and failed to pay Patrick his policy limits for uninsured motorist coverage. Plaintiffs filed suit on September 6, 2022, in Indiana state court alleging breach of contract for failing to pay the uninsured motorist policy limit to Patrick and loss of consortium by Christine, seeking, *inter alia,* damages from "personal injuries" and punitive damages "as a direct and proximate result of the Defendants' negligent acts and omissions." *See* DE 6 (Pls. State Ct. Compl.) at ¶¶ 10-11. But the complaint was not served on State Farm's registered agent until November 17, 2022, and on December 2, 2022, State Farm removed the case from state court to federal court based on 28 U.S.C. § 1332 diversity jurisdiction. *See* DE 1 (Notice of Removal).

About a year after the case had been in federal court, on November 9, 2023, Plaintiffs were granted leave to amend their complaint to add additional allegations and claims against State Farm for bad faith and for breach of the duty of good faith and fair dealing. DE 23. In the Amended Complaint, Plaintiffs allege that on

November 15, 2022 (that is, more than two months after filing suit but two days before serving State Farm with the lawsuit), "Plaintiffs sent a prejudgment interest demand for policy limits to which Defendants [*sic*] failed to timely respond to." DE 24 at ¶ 11. They further allege that between December 16, 2022 and January 16, 2023 (that is, almost a month after State Farm was served and two weeks after State Farm had removed the case to federal court), "Plaintiffs sent Defendant copies of liens, photos, tax returns, medical records, and bills that clearly demonstrated Plaintiffs' injuries were many times in excess of Defendants' policy limits." *Id.* at ¶ 12. Attached to Plaintiffs' Amended Complaint are documents from an insurance coordinator indicating that Patrick's medical bills were more than $2,600,000, and presumably these were among the materials produced. *See* DE 24-1.

In their motion, Plaintiffs elaborate on what documents they say were transmitted in December 2022 and January 2023. While the exact contents of these transmissions are not relevant to this motion, Plaintiffs state that these documents were sent to State Farm's counsel via a Dropbox link[1] as part of discovery and to make a settlement demand in this litigation. DE 46 (Pls.' Mot) at ¶¶ 6-9. But Plaintiffs say that when they deposed Heather Hoke, the claims specialist who reviewed Plaintiffs' insurance claim after it was presented to State Farm, she testified that she did not know whether the documents Plaintiffs sent as part of this

---

[1] Dropbox is a file hosting service that allows individuals to share files or folders of files with other individuals via internet links. *See generally* Wikipedia, "Dropbox" *available at* https://en.wikipedia.org/wiki/Dropbox (accessed September 11, 2025).

litigation were in the claims file when she reviewed it in connection with the original insurance claim. *Id.* at ¶ 9.

## Discussion

"The Seventh Circuit has cautioned that disqualification is a prophylactic device employed to protect the attorney-client relationship and is a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Connolly v. Wilkening*, 2025 WL 663660, at *1 (N.D. Ind. Feb. 25, 2025) (quoting *Cromley v. Bd. of Ed. of Lockport Twp. High Sch. Dist. 205*, 17 F.3d 1059, 1066 (7th Cir. 1994)). "[S]uch motions should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982).

"Disqualification motions require a two-step analysis. The court must consider (1) whether an ethical violation has actually occurred, and (2) if disqualification is the appropriate remedy. The burden is on the moving party to show facts necessitating disqualification." *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997) (citations omitted). "[T]he movant 'bears a heavy burden of proving facts required for disqualification.'" *Freeman Equip., Inc. v. Caterpillar, Inc.*, 262 F. Supp. 3d 631, 634 (N.D. Ill. 2017) (quoting *Guillen*, 956 F. Supp. at 1421).

While Plaintiffs have not noticed any such depositions as far as the Court is aware, Plaintiffs argue they are entitled to depose State Farm's counsel (and other staff at their law firm) "who were in possession or control of the documents, photographs, and critical information," DE 46 at ¶ 10, that Plaintiffs produced during

discovery in this litigation. Plaintiffs extrapolate that their supposed entitlement to this fact discovery from State Farm's counsel requires their disqualification. *Id.* at ¶ 11. Plaintiffs rely on Indiana Rules of Professional Conduct 3.7 and 1.7 to argue that State Farm's counsel has a conflict-of-interest because they say defense counsel and their firm "are material witnesses to the allegations made in Plaintiffs' Amended Complaint" relating to bad-faith treatment of Plaintiffs' insurance claims. DE 46 at ¶ 15.

Rule 1.7 governs Conflicts of Interest and Current Clients, also known as concurrent conflicts of interests. It states that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: … there is a significant risk that the representation of one or more clients will be materially limited by ... a personal interest of the lawyer." Ind. Rules of Prof'l Conduct 1.7. Even then, a lawyer may still represent a client if the following conditions are met: "(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing." Ind. Rules of Prof'l Conduct 1.7(b).

Rule 3.7 governs lawyers as witnesses. It states that " a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1)

the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." Ind. Rules of Prof'l Conduct 3.7(a). But again, there is a carveout, and "[a] lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." Ind. Rules of Prof'l Conduct 3.7(b).

As other courts have observed, the "moving party bears the burden of proving that an actual conflict of interest in violation of Rule 1.7 exists, rather than merely a potential one." *Mills v. Hausmann-McNally, S.C.*, 992 F. Supp. 2d 885, 890 (S.D. Ind. 2014). And likewise, given that "courts treat motions under Rule 3.7 with skepticism," *id.* at 891, "the moving party bears the burden of *concretely* establishing the necessity of disqualification." *Id.* (emphasis added). "The moving party must show both that the testimony it seeks to elicit from the attorneys in question is 'more than marginally relevant' to the issues being litigated, and that 'the testimony will result in evidence that cannot be obtained elsewhere.' *Id.* at 895 (quoting *Utilimaster Corp. v. Ind. Dept. of State Revenue,* 967 N.E.2d 92, 96 (Ind.T.C.2012)).

Plaintiffs' motion is premised on State Farm's claims specialist's testimony that she was unaware whether documents Plaintiffs produced in litigation via Dropbox were within State Farm's claim file when she reviewed it. *See* DE 46 at 3-4 (quoting from H. Hoke Dep. Tr.). All parties agree that these were materials transmitted in December 2022 or January 2023, or months after the lawsuit was filed. This is not a matter of dispute. *See* DE 50 (Def.'s Resp. Br.) at 7 ("State Farm would

6

be willing to stipulate as to the dates when certain materials were received, as the dates are either identified in the email correspondence or in the link provided by Plaintiff's counsel."). Her testimony does not support a notion that State Farm's counsel received documents and withheld them from State Farm (which is what Plaintiffs have implied is their basis to seek defense counsel's deposition). First, the claims specialist testified that at the time in question, State Farm "didn't have access to Dropboxes," but that if she received a link to one with a settlement demand it would have been forwarded to State Farm's counsel. DE 46 at 4 (quoting H. Hoke Dep. Tr.). Second, elsewhere she testified that she was not involved in overseeing or supervising the litigation in which the documents at issue were produced. DE 50 at 6 ("Q. Have you had any involvement in supervising this litigation since November 15th of 2022? A. No."). Thus, Plaintiffs have not shown that defense counsel or its firm is a necessary witness to any relevant issue in the case. All counsel could testify to is when documents were received (again, a matter not in dispute) and whether he or someone in his office shared those documents with his client, State Farm.[2] Plaintiff has taken numerous depositions of State Farm employees in this case and a deposition of State Farm pursuant to Fed. R. Civ. P. 30(b)(6). Those depositions (or a simple interrogatory or request for admission) would have provided Plaintiff with ample opportunity to ask when State Farm had certain documents in its possession.

---

[2] Plaintiffs earlier in this case disavowed that they were pursuing Rule 11 sanctions or any discovery-related claims relating to the production of documents in December 2022 and January 2023. When seeking leave to amend, Plaintiffs represented to the Court that they were "not making a claim pursuant to I.C. § 34-51-1-1 or Fed. R. Civ. P. 11, and Plaintiffs are not seeking attorney's fees and punitive damages for conduct from the litigation." DE 23 (quoting Plaintiff's Reply Br. in support of Mot. for Leave to Am.).

If Plaintiffs failed to do that, disqualification of opposing counsel so that Plaintiffs can depose them is not the proper solution. *Mills*, 992 F. Supp. 2d at 895 (requiring that evidence cannot be obtained elsewhere before disqualifying at attorney under Rule 3.7).

Nor have Plaintiffs met their burden to show an actual conflict-of-interest exists between State Farm and defense counsel. All the Court has before it are Plaintiff's suppositions that defense counsel concealed information from his own client from the start of this litigation. That is not evidence. State Farm does not agree that occurred and does not see any conflict of interest. It is entitled to counsel of its choosing and the Court will not upset that based on nothing more than Plaintiffs' say-so. *See Freeman*, 689 F.2d at 719 ("[W]ith respect to orders granting disqualification motions, the losing party with the tainted counsel is immediately separated from the representation of his choice. The effect of this is immediate and measurable.").

Having found no ethical violation on the part of State Farm's counsel, the Court need not go further. But because the parties have both raised the issue of the scope of relevancy in bad faith insurance claims, the Court will briefly address the issue. "[A]n insured who believes an insurance claim has been wrongly denied has two distinct legal theories available, one for breach of the insurance contract and one in tort for breach of the duty of good faith and fair dealing." *Patel v. United Fire & Cas. Co.*, 80 F. Supp. 2d 948, 952 (N.D. Ind. 2000) (citing *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 520 (Ind.1993)). As Indiana Supreme Court has held, "the unique character of the insurance contract" creates a "special relationship" between an

8

insured and insurer that imposes additional duties on an insurer that potentially subject them to tort liability and non-contractual damages if they act in bad faith. *Erie Ins.*, 622 N.E.2d at 519 ("Given the *sui generis* nature of insurance contracts, then, we conclude that it is in society's interest that there be fair play between insurer and insured."); *id.* ("In tort, all damages directly traceable to the wrong and arising without an intervening agency are recoverable."). In other words, "a finding of bad faith permits an insured to recover all damages, including emotional damages, proximately caused by the insured's conduct." *Patel*, 80 F. Supp. 2d at 959.

"Bad faith conduct by an insurer has been described by Indiana courts as more than 'poor judgment or negligence' but requires conduct that is evidenced by a 'state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will.'" *Patel*, 80 F. Supp. 2d at 958 (quoting *Colley v. Indiana Farmers Mut. Ins. Group,* 691 N.E.2d 1259 (Ind. App. 1998)). What's more, "conduct that occurred before the insured filed her bad faith claim [is] relevant to whether the insurer acted in bad faith, but conduct after the claim was filed [is] not relevant." *Allstate Ins. Co. v. Fields*, 885 N.E.2d 728, 732 (Ind. Ct. App. 2008). The parties dispute where this line is to be drawn on relevance. And they will continue to have to do so because this motion is not the time or place to decide this issue.

According to Plaintiffs, they sought leave to amend their complaint on September 1, 2023 to assert allegations of bad faith relating to their production of documents in discovery in late 2022, early 2023. DE 52 (Pls. Reply Br.) at 3. Thus, Plaintiffs contend that any conduct predating September 1, 2023, is relevant to their

9

bad faith claim. As State Farm sees it on the other hand, bad faith was an element of the case from the start (in other words, before these documents were transmitted). DE at 8. That is because in the original complaint Plaintiffs alleged that "as a direct and proximate result of the Defendants' negligent acts and omissions," Plaintiffs suffered "injuries" not just contractual damages. *Id.* (quoting DE 6 at ¶ 10). And Plaintiffs sought punitive damages in connection with their breach of contract claim and Indiana law requires some tort, such as bad faith, before punitive damages can be had in a breach of contract claim. *See Erie Ins.*, 622 N.E.2d at 518 ("[T]o recover punitive damages in a lawsuit founded upon a breach of contract, the plaintiff must plead and prove the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded."). But as the Court stated when it granted leave to amend, "[w]hether evidence concerning post-complaint conduct is legally relevant to Plaintiffs' bad faith claim is an issue that can be addressed down the line if necessary (either at the summary judgment stage or in ruling on the admissibility of evidence at trial)." DE 23 at 4. This was not something that needed to be determined at the pleading amendment stage, and it is not something that needs to be decided in connection with an unsuccessful motion to disqualify counsel. It is enough to say that Plaintiffs cannot use their bad faith allegations to disrupt this litigation at this time by disqualifying defense counsel when no conflict-of-interest or the necessity of State Farm's counsel as a witness has been shown.

## Conclusion

For the reasons discussed, Plaintiff's Motion to Disqualify Defense Counsel [DE 46] is DENIED.

So ORDERED this 15th day of September 2025.

*/s/ Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT
